**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

EAD CONTROL SYSTEMS, L.L.C., a
Nebraska Limited Liability Company,

        Plaintiff,

vs.

BESSER COMPANY USA, a Michigan
corporation, d/b/a BESSER INTER-
NATIONAL PIPE MACHINERY
CORPORATION,

        Defendant.

No. C 11-4029-MWB


**MEMORANDUM OPINION AND
ORDER REGARDING PLAINTIFF'S
MOTION IN LIMINE**

<u>FILED UNDER SEAL</u>

---

**TABLE OF CONTENTS**

I.    **INTRODUCTION**............................................................................ 2
    *A.*    *Factual Background* ............................................................ 2
    *B.*    *Procedural Background* ....................................................... 3

II.   **LEGAL ANALYSIS** .................................................................... 6
    *A.*    *Rule 104 And Preliminary Questions Of Admissibility* ..................... 6
    *B.*    *Evidence From Mr. Wolfe* ...................................................... 7
        *1.*    *Arguments of the parties*................................................ 8
        *2.*    *Analysis* ................................................................ 10
    *C.*    *Evidence Of Damages For Rewriting Software* ............................ 18
        *1.*    *Arguments of the parties*............................................... 18
        *2.*    *Analysis* ................................................................ 19

III.  **CONCLUSION** ........................................................................ 21

This case involves a dispute regarding work on control software that plaintiff EAD Control Systems, LLC, (EAD) performed as a subcontractor for defendant Besser Company USA (Besser) on a professional controls system for robotic cranes for a third party, Inland. In the Motion In Limine (docket no. 39) now before me, EAD seeks to exclude two categories of evidence: (1) evidence of damages on Besser's counterclaim for breach of contract that Besser will allegedly incur in providing a new controls system to Inland, *i.e.*, a complete rewrite of EAD's software; and (2) expert opinion testimony by Rod Wolfe and James Williams concerning various aspects of EAD's work on the Inland project, including the costs of any new controls system. Besser contends that both categories of evidence are admissible, although it represents that it will not call Mr. Williams at trial, so that the second category of evidence is disputed only as to testimony from Mr. Wolfe.

## I. INTRODUCTION

### A. Factual Background

As I explained in my ruling on Besser's motion for partial summary judgment, *see EAD Control Sys., L.L.C., v. Besser Co. USA*, 2012 WL 2357572 (N.D. Iowa June 18, 2012) (slip op.), the essential factual background to this litigation is as follows. EAD, a Nebraska limited liability company with its principal place of business in Douglas County, Nebraska, and Besser, a Michigan corporation with offices in several locations, including Sioux City and Boone, Iowa, entered into a contract on March 14, 2008, which provided that EAD would produce a controls system for operating robotic cranes at Inland's pipe-producing facility in Calgary, Canada. The contract specified various programming and other services that EAD would perform, including the

production of certain numbers of diagrams and drawings that EAD would submit to Besser. The contract stated that EAD would perform these services for the "Total Fixed Cost" of $165,000, with estimated travel expenses of $13,000.00. Besser's Summary Judgment Appendix at 10 (docket no. 25-3). EAD alleges that Besser has not paid EAD in full for work EAD performed pursuant to this original contract.

EAD also alleges that Besser has failed to pay EAD for additional work that EAD performed beyond the scope of the original contract. The contract includes a provision regarding additional services that might be performed by EAD: "Additional services will be provided on a time and materials basis upon change order acceptance. EAD Controls rate sheet has been submitted." Besser's Summary Judgment Appendix at 10. The parties dispute whether Besser accepted any change orders from EAD. EAD alleges, and Besser disputes, that Besser employee Mark Hilts, on Besser's behalf, accepted change orders and thus authorized EAD to perform additional services beyond those to which the parties had agreed in the original contract. The parties dispute whether Hilts possessed actual or apparent authority to modify or enter into contracts on Besser's behalf. Furthermore, EAD alleges, and Besser disputes, that Besser waived the change order provision by paying EAD for additional work beyond that specified in the original contract.

### B.    Procedural Background

As I also explained in my ruling on Besser's motion for partial summary judgment, EAD brought this action against Besser on March 23, 2011, alleging breach of contract and unjust enrichment. EAD seeks damages, plus interest, for three categories of work performed for Besser: (1) failure to pay EAD $24,000.00 for services EAD performed pursuant to the original contract; (2) failure to pay EAD

$195,724.59 in "Time and Materials and Expenses" invoices above the fixed cost of the contract; and (3) failure to pay EAD $120,163.62 for drawings and documents that "EAD was required to prepare" in excess of the number agreed to by the parties in the contract. EAD originally sought the full amount of damages under both breach-of-contract and unjust-enrichment theories.

Besser filed its Answer And Counterclaim on April 19, 2011, and its Amended Answer And Counterclaim on April 11, 2012, in which Besser denies EAD's claims, asserts several affirmative defenses, and brings its own claim of breach of contract against EAD. Besser subsequently filed its April 13, 2012, Motion For Partial Summary Judgment on EAD's unjust enrichment claim. I granted that motion on June 19, 2012, holding that EAD may proceed only on its breach-of-contract theory. *See* docket no. 36.

While the partial summary judgment motion was pending, the parties also litigated Besser's May 4, 2012, Motion To Reopen Discovery (docket no. 26), in which Besser sought to reopen discovery for 90 days to allow limited discovery on the issue of problems that Inland contends still exist with the control system provided by EAD and the course of action and expense necessary for Besser to correct any such problems, including entirely rewriting EAD's software. EAD opposed that motion, *see* EAD's Opposition To Besser's Motion To Reopen Discovery (docket no. 33), on the grounds that the requested additional discovery period would run up to the date then scheduled for trial, August 27, 2012, so that it was, in effect, a motion to continue the trial, and that the May 1, 2012, letter from Inland making further complaints about EAD's software did not demand a rewriting of the software. EAD also argued that Besser admitted that it was requesting an entirely new category of damages never before disclosed, but reasonably apparent from prior information from Inland and the person hired to attempt to "patch" the EAD software. Thus, EAD argued that Besser had not

4

shown exceptional grounds for reopening discovery and continuing the trial to conduct such discovery.

On May 29, 2012, then-Chief United States Magistrate Judge Paul A. Zoss denied Besser's Motion To Reopen Discovery. *See* Order (docket no. 35). Judge Zoss recognized that the motion was, in effect, a motion to continue the trial, because it sought to reopen discovery up to the scheduled trial date. Judge Zoss concluded that the May 1, 2012, letter from Inland did not provide a basis for a continuance of the trial to conduct additional discovery, because the letter did not raise a new issue, but simply reiterated long-standing complaints about EAD's software, which had been the basis for Besser's counterclaim since it was filed in April 2011. Judge Zoss specifically rejected Besser's contention that the letter was a demand for "an entirely new system." Judge Zoss concluded that Besser had failed to show good cause to reopen discovery after the deadline for discovery had expired.

On June 21, 2012, I entered an Order (docket no. 37), continuing the trial to November 8, 2012, based on a conflict in my own schedule with the August 27, 2012, trial date in this case. Notwithstanding that this continuance provided more than two additional months, and a total of more than four months, during which the parties could have pursued discovery on Besser's claim for additional damages for rewriting EAD's software, neither party sought to reopen discovery at any time after the trial was continued.

On September 12, 2012, in anticipation of the November 8, 2012, trial, EAD filed the Motion In Limine (docket no. 39) now before me. EAD asserts that its motion is closely related to issues addressed in Judge Zoss's denial of Besser's Motion To Reopen Discovery. As mentioned above, EAD's Motion In Limine seeks to exclude evidence of damages on Besser's counterclaim for breach of contract that Besser will allegedly incur in providing a new controls system to Inland, *i.e.*, a complete "rewrite"

5

of EAD's software, on the ground that such damages have never been a part of Besser's counterclaim and were never the subject of discovery during the discovery period. EAD's motion also seeks to exclude expert opinion testimony from two witnesses, Mr. Wolfe and Mr. Williams, on the ground that EAD had not received the full disclosures required by Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure for experts retained or specially employed for this litigation. Besser filed its Opposition To EAD's Motion In Limine (docket no. 40) on October 1, 2012, disputing exclusion of evidence of damages for rewriting EAD's control system or opinion testimony from Mr. Wolfe, but representing that Mr. Williams had not been disclosed and would not be called as a witness at trial.

My crowded schedule has not permitted the scheduling of oral arguments on the Motion In Limine, nor do I find that such oral arguments are likely to be helpful. Therefore, I turn to disposition of the Motion.

## II.    *LEGAL ANALYSIS*

I will consider the challenged categories of evidence in turn, although I will begin with EAD's challenge to expert opinion testimony from Mr. Wolfe, rather than with the challenge to certain damages evidence. Before considering either category, I will first briefly consider whether the motion raises issues properly addressed prior to trial.

### A.    *Rule 104 And Preliminary Questions Of Admissibility*

As a preliminary matter, I note that Rule 104 of the Federal Rules of Evidence provides, generally, that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court. . . ." FED. R. EVID. 104. Such preliminary

questions may depend upon such things as whether the factual conditions or legal standards for the admission of certain evidence have been met. *See id.*, Advisory Committee Notes, 1972 Proposed Rule. This rule, like the other rules of evidence, must be "construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that truth may be ascertained and proceedings justly determined." Fed. R. Evid. 102. I conclude that preliminary determination of the admissibility of the evidence put at issue in EAD's Motion In Limine will likely serve the ends of a fair and expeditious presentation of issues to the jury. This is true, notwithstanding that EAD does not challenge either of the categories of evidence at issue as inadmissible under the Federal Rules of Evidence, but under "discovery" rules in the Federal Rules of Civil Procedure.

Therefore, I turn to consideration of the admissibility of the categories of evidence in dispute.

## B. Evidence From Mr. Wolfe

As noted above, EAD seeks to exclude expert opinion testimony from Mr. Wolfe and Mr. Williams, based on inadequate disclosures pursuant to Rule 26(a)(2)(B). More specifically, the motion seeks to exclude expert opinion testimony of Rod Wolfe and James Williams to the extent such opinions relate to EAD's work on the Inland project, the sufficiency of EAD's software design, any alleged defects in the controls system originally designed and installed by EAD, any alleged defects in the controls system as modified by Nesckire (another subcontractor headed by a former lead programmer for EAD), any alleged need for a new controls system, and the costs of any such new controls system, *i.e.*, a complete "rewrite" of EAD's software.

Besser represents that it has not disclosed and will not call Mr. Williams at trial, so I need focus only on the admissibility of any expert opinion testimony from Mr. Wolfe.

### 1.    *Arguments of the parties*

EAD argues, in essence, that Mr. Wolfe was an expert "retained or specially employed to provide expert testimony in the case," within the meaning of Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.  EAD argues that the disclosures made for Mr. Wolfe, which EAD does not dispute comply with Rule 26(a)(2)(C), are not adequate for such a "retained" expert pursuant to Rule 26(a)(2)(B).  EAD argues that Mr. Wolfe had very limited involvement with EAD's work on the Inland project, even though he worked as a subcontractor on a different part of the Inland project. Indeed, EAD argues that Mr. Wolfe's only involvement with EAD's work concerned the "handshake" between the EAD portion of the system and the part of the system on which Mr. Wolfe was working. EAD argues that nothing about this limited contact permits Mr. Wolfe to offer opinions about the overall EAD system.  Instead, EAD argues that it was only after EAD left the project, and the parties here were fighting about payment, that Mr. Wolfe made an estimate of the work required to rewrite the EAD system, but such work was not then performed by Mr. Wolfe.  Thus, EAD argues that Mr. Wolfe's review of the EAD system and his estimate of the cost of rewriting that system were in anticipation of and for the purposes of this litigation. EAD also argues that Besser's corporate representative testified before the discovery deadline that Besser had decided not to have Mr. Wolfe or his company move forward with a rewrite, because, if a rewrite was necessary, Besser intended to do the rewrite itself.

Besser argues that Mr. Wolfe's testimony should be permitted, because, contrary to EAD's arguments, Mr. Wolfe will testify as a non-retained expert from knowledge

and opinions formed solely in his capacity as a subcontractor for Besser on the Inland project, not as an expert retained for purposes of this litigation. Thus, Besser argues that it has made an adequate disclosure for Mr. Wolfe's testimony pursuant to Rule 26(a)(2)(C), which EAD has not disputed, rather than the full expert report required by Rule 26(a)(2)(B). Besser argues that, although non-retained experts, that is, experts who were not "retained or specially employed" to offer opinions in the case, are most frequently treating physicians, that is not the limit on the universe of non-retained experts. Rather, Besser argues that the question is whether the witness came to the litigation as a "stranger" and drew his or her opinion from facts supplied by others in preparation for trial. Besser argues that, using this test, courts have held that a contractor, such as Mr. Wolfe, may testify as a non-retained expert, without a report, citing, *inter alia*, *American Property Constr. Co. v. Sprenger Lang Found.*, 274 F.R.D. 1, 4 (D.D.C. 2011). Besser argues that this is so, even if the contractor does not perform follow-up work beyond inspecting the allegedly inadequate work and quoting or bidding on how to fix it.

Besser argues that the fact that Mr. Wolfe gained his knowledge of EAD's controls system after EAD left the job and after litigation had been filed does not make him an expert retained or specially employed to provide an opinion in the case. What matters, Besser argues, is the actual context in which and the purpose for which Mr. Wolfe gained his knowledge and developed his opinions. Besser argues that, even if Mr. Wolfe was a "retained" expert who should have provided a full report, EAD has not been harmed by Besser's failure to provide such a report from Mr. Wolfe, or has waived any claim of harm, because EAD did not challenge the adequacy of the disclosure for Mr. Wolfe at any time since the disclosure was made on January 30, 2012. Besser argues that EAD's inaction demonstrates that it already knew everything it needed to know to prepare for Mr. Wolfe's testimony, and that EAD's arguments

about the adequacy of the basis for Mr. Wolfe's testimony, where he had indicated that he does not have complete information about the hardware and software configuration involved in EAD's control system, goes to the weight, not the admissibility, of his expert testimony.

### 2. Analysis

The Eighth Circuit Court of Appeals has stated that a district court's exclusion of expert testimony will be reviewed for "abuse of discretion." *See Brooks v. Union Pac. R. Co.*, 620 F.3d 896, 899 (8th Cir. 2010). The court has also explained that "'[f]ailure to disclose an expert witness required by rule 26(a)(2)(B) can justify exclusion of testimony at trial.'" *McCoy v. Augusta Fiberglass Coatings, Inc.*, 593 F.3d 737, 746 (8th Cir. 2010) (quoting *Crump v. Versa Prod., Inc.*, 400 F.3d 1104, 1110 (8th Cir. 2005), in turn citing FED. R. CIV. P. 37(c)(1)). On the other hand, where the failure to make an adequate disclosure did not prejudice the opposing party, that is, did not affect the opposing party's substantial rights, the district court does not abuse is discretion in allowing the expert's testimony. *Id.*; *see also Crump*, 400 F.3d at 1110 (declining to determine whether or not certain experts were "retained" or "non-retained," because even if they were "retained," the opposing party could show no prejudice from inadequate disclosure, citing FED. R. CIV. P. 37(c)(1)).

Rule 26(a)(2) of the Federal Rules of Civil Procedure provides for disclosure of expert testimony, in pertinent part, as follows:

> **(A)** *In General.* In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

**(B)** *Witnesses Who Must Provide a Written Report.* Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—*if the witness is one retained or specially employed to provide expert testimony in the case* or one whose duties as the party's employee regularly involve giving expert testimony.  The report must contain:

   (i)   a complete statement of all opinions the witness will express and the basis and reasons for them;

   (ii)  the facts or data considered by the witness in forming them;

   (iii) any exhibits that will be used to summarize or support them;

   (iv)  the witness's qualifications, including a list of all publications authored in the previous 10 years;

   (v)   a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

   (vi)  a statement of the compensation to be paid for the study and testimony in the case.

**(C)** *Witnesses Who Do Not Provide a Written Report.*  Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

   (i)   the subject matter on which the witness is expected to present evidence under

> Federal Rule of Evidence 702, 703, or
> 705; and
>
> (ii)    a summary of the facts and opinions to
>         which the witness is expected to testify.

FED. R. CIV. P. 26(a)(2)(B)-(C) (emphasis added).[1]  As various courts have noted, Rule 26(a)(2)(B) and (C) distinguish between the "report" requirements for retained and non-retained experts.  *See, e.g., Vaughn v. United States*, 542 F. Supp. 2d 1331, 1336 (S.D. Ga. 2008) (citing cases).

The distinguishing factor is whether or not the expert was "one retained or specially employed to provide expert testimony in the case."  *See* FED. R. CIV. P. 26(a)(2)(B) and (C).  Unfortunately, neither the language of the rule nor the Advisory Committee notes shed much light on the meaning of this phrase for purposes of this case, where the rule provides no additional factors to consider, and the Advisory Committee notes only identify a "treating physician" as an example of an expert who was not "retained or specially employed" in the case to provide expert testimony.  *Id.*, Advisory Committee notes.  As Besser points out, a judge of the District of the District of Columbia has noted that the "universe" of witnesses who may qualify as "non-retained" witnesses is not limited to treating physicians or health care professionals, *see* American *Property Constr. Co. v. Sprenger Lang Found.*, 274 F.R.D. 1, 3 (D.D.C. 2011), and I agree, because the language of the rule is much more general.

As Besser also points out, the First Circuit Court of Appeals has addressed the meaning of this language, albeit in a case involving a treating physician, by identifying factors pertinent to the scope of the language, as follows:

---

[1] As United States Magistrate Judge Walters of the Southern District of Iowa noted, "Rule 26 was amended effective December 1, 2010 to add a new subsection (a)(2)(C) entitled 'Witnesses Who Do Not Provide a Written Report.'"  *Crabbs v. Wal-Mart Stores, Inc.*, 2011 WL 499141, *1 (S.D. Iowa Feb. 4, 2011) (slip op.).

Interpreting the words "retained or specially employed" in a common-sense manner, consistent with their plain meaning, we conclude that as long as an expert was not retained or specially employed in connection with the litigation, *and his opinion about causation is premised on personal knowledge and observations made in the course of treatment*, no report is required under the terms of Rule 26(a)(2)(B). *See [Meyers v. National R.R. Pass. Corp.*, 619 F.3d 729, 734-35 (7th Cir. 2010)]; *Garcia v. City of Springfield Police Dep't*, 230 F.R.D. 247, 249 (D. Mass. 2005); *Sprague v. Liberty Mut. Ins. Co.*, 177 F.R.D. 78, 81 (D.N.H. 1998). This sensible interpretation is also consistent with the unique role that *an expert who is actually involved in the events giving rise to the litigation* plays in the development of the factual underpinnings of a case. Finally, this interpretation recognizes that *the source, purpose, and timing of such an opinion* differs materially from the architecture of an opinion given by an expert who is "retained or specially employed" for litigation purposes.

Consequently, *where, as here, the expert is part of the ongoing sequence of events and arrives at his causation opinion during treatment, his opinion testimony is not that of a retained or specially employed expert. See, e.g., In re Aredia & Zometa Prods. Liab. Litig.*, 754 F. Supp. 2d 934, 937–38, No. 3:06–MD–1760, 2010 WL 4970910, at *2 (M.D. Tenn. Dec.7, 2010); *Salas v. United States*, 165 F.R.D. 31, 33 (W.D.N.Y. 1995). *If, however, the expert comes to the case as a stranger and draws the opinion from facts supplied by others, in preparation for trial, he reasonably can be viewed as retained or specially employed for that purpose, within the purview of Rule 26(a)(2)(B). See Stanley Martin Cos. v. Univ'l Forest Prods. Shoffner LLC*, 396 F. Supp. 2d 606, 619 n. 8 (D. Md. 2005); *Garcia*, 230 F.R.D. at 249.

*Downey v. Bob's Discount Furniture Holdings, Inc.*, 633 F.3d 1, 7 (1st Cir. 2011) (emphasis added; footnotes omitted).

Other courts cite similar factors. *See also American Property Constr. Co.*, 274 F.R.D. at 4 (concluding that whether an expert is required to meet all of the reporting requirements of Rule 26(a)(2)(B) "turns both on the character of the contemplated testimony," that is, whether or not it involves testimony within the ambit of Rules 702, 703, or 705 of the Federal Rules of Evidence, "as well as the witness' relationship to the proponent," and citing as relevant factors whether the witness is a "stranger," or instead relied on first-hand knowledge of the circumstances involved in the litigation, and whether the information that the expert obtained and the opinions that the expert formed were gained while performing work that the expert was hired to do in his or her capacity as an employee or contractor, and citing cases holding that "contractors" and "subcontractors" were experts not required to provide full expert reports); *Bekaert Corp. v. City of Dyersburg*, 256 F.R.D. 573, 575-77 (W.D. Tenn. 2009) (noting that the rule and Advisory Committee notes do not limit experts who were *not* "retained or specially employed" to treating physicians, but can include other experts within that status, and observing that the key factor is the substance of the expert's testimony, rather than his status, and depends "largely on whether the expert's opinion will be limited to testimony based on his personal knowledge of the factual situation or whether the testimony will be based on information they utilized to develop specific opinion testimony, i.e., knowledge acquired or developed in anticipation of litigation").

Some lower courts have used a "burden-shifting" procedure when confronted with the question of whether or not a particular expert witness was "retained or specially employed" and, hence, subject to the extensive requirements of Rule 26(a)(2)(B) for an expert's report. As one such court most recently explained,

> At least one district court in this circuit has concluded that the initial burden should be on "'the moving party ... to show valid grounds for striking the designation of [an] expert witness.'" *Cinergy Commc'ns Co. v. SBC Commc'ns,*

*Inc.*, No. 05–2401, 2006 WL 3192544, at \*3 (D. Kan. Nov. 2, 2006) (citing *Marek v. Moore*, 171 F.R.D. 298, 302 (D. Kan. 1997)). This may include demonstrating that a witness designated under Rule 26(a)(2)(A) has failed to produce the written report typically required of an expert witness. *Id.*

Thereafter, the *Cinergy* court concluded that the burden should shift to the designating party to produce some evidence "demonstrat[ing] that its designated expert is not one 'retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony.'" *Id.* (quoting Fed.R.Civ.P. 26(a)(2)(B)); *see also Fielden*, 482 F.3d at 869 (holding that a treating physician was not retained for purposes of providing expert testimony because "there is evidence that [the treating physician] formed his opinions as to causation at the time he treated [the plaintiff]") (emphasis added). The *Cinergy* court found that the party designating the expert should bear this latter burden "because it is more likely to possess the information necessary to establish the status of the witness." 2006 WL 3192544, at \*3.

*Morris v. Wells Fargo Bank, N.A.*, 2010 WL 2501078, \*2 (D. Colo. June 17, 2010) (slip op.). In *Morris*, the court found this burden-shifting scheme "persuasive" and adopted it. *Id.*

I agree that such a burden-shifting analysis is appropriate, to the extent that the challenging party must show not only that no expert report has been filed, *see id.*, but that the anticipated testimony of the witness includes "expert" evidence within the meaning of Rules 702, 703, or 705 of the Federal Rules of Evidence. *See American Property Constr. Co.*, 274 F.R.D. at 3 (proposing a two-prong inquiry that begins with this inquiry, then turns to whether or not the witness was "retained or specially employed"). The proponent of the expert witness must then demonstrate that the expert was *not* "retained or specially employed to provide expert testimony in the case" (or

15

that the witness is not one "whose duties as an employee of the party regularly involve giving expert testimony"). FED. R. CIV. P. 26(a)(2)(B); *Morris*, 2010 WL 2501078 at *2.

Here, EAD, the challenging party, has met its initial burden to show that Mr. Wolfe has been designated to give "expert" testimony as to EAD's work on the Inland project, the sufficiency of EAD's software design, any alleged defects in the controls system originally designed and installed by EAD, any alleged defects in the controls system as modified by Nesckire (another subcontractor headed by a former lead programmer for EAD), any alleged need for a new controls system, and the costs of any such new controls system. All such testimony involves opinions based on Mr. Wolfe's scientific, technical, or other specialized training, and will be helpful to the trier of fact to understand the evidence or to determine a fact in issue. *See* FED. R. EVID. 702. Besser does not argue otherwise. EAD has also shown that no expert report satisfying the requirements of Rule 26(a)(2)(B) has been filed, although EAD does not dispute that it has received disclosures that satisfy Rule 26(a)(2)(C) for a "non-retained" expert. *Morris*, 2010 WL 2501078 at *2 (the opponent of the evidence may meet its burden by demonstrating that a witness designated under Rule 26(a)(2)(A) has failed to produce the written report typically required of an expert witness).

Thus, the burden shifts to Besser to show that Mr. Wolfe is *not* "retained or specially employed" to provide expert testimony in this case. *Id.* Contrary to EAD's assertions, the fact that Mr. Wolfe was asked to evaluate the full EAD system and to propose solutions, and ultimately quoted the cost of a complete rewrite, but was not then employed to do such a rewrite, all after EAD had left the jobsite and EAD and Besser were engaged in litigation, does not demonstrate conclusively that Mr. Wolfe was "retained or specially employed" to provide expert testimony in the case. All that it demonstrates is a temporal overlap between the litigation and the expert's

development of his or her opinion, which, at most, provides an *inference* that the expert was retained to offer expert testimony in the case. *See Downey*, 633 F.3d at 7 (noting that, ordinarily, the "timing" of the opinion differs between a "retained" and a "non-retained" expert). That inference dissipates, however, where the circumstances giving rise to the claim or the injury from it continue to evolve after litigation commences, such as where the problems with EAD's software continue to plague the third party for whom the software was written, rather than in the circumstances where the claim and injury arise from a discrete event, such as a building collapse.

More specifically, notwithstanding that Mr. Wolfe's examination of EAD's software overlapped with the litigation, the evidence presented in support of and in opposition to the Motion In Limine shows that Mr. Wolfe was hired *to try to resolve the problems with EAD's software*, not as a trial expert. As Besser points out, Mr. Wolfe was *not* a "stranger" to the circumstances giving rise to the lawsuit, even if his involvement with EAD's software *prior to EAD leaving the jobsite* was limited. *See Downey*, 633 F.3d at 7. Rather, his opinions about EAD's systems and what was required to fix them were premised on personal knowledge and observations made in the course of what might be described as "treatment" of the software problem, as Besser asked him to find a solution that would satisfy Inland. *Id.*; *American Property Constr. Co.*, 274 F.R.D. at 4 (concluding that a subcontractor who inspected the premises and submitted a bid, but was never actually hired to perform any work at the property, was a "non-retained" expert who could testify at trial, notwithstanding that he did not provide a report that met the requirements of Rule 26(a)(2)(B)). Besser has shown that, unlike a "retained" expert, Mr. Wolfe was not asked to base an opinion on facts supplied by others, in preparation for trial, but based his opinion on personal knowledge of the factual situation that he obtained as part of the ongoing sequence of events. *Id.*; *American Property Constr. Co.*, 274 F.R.D. at 4; *Bekaert Corp.*, 256

F.R.D. at 575-77. Clearly, here, Inland was still demanding a solution, and Besser was still actively seeking one, at the time that Mr. Wolfe performed his evaluation and submitted his quote.

While I will deny this part of EAD's Motion In Limine, I caution Besser that Mr. Wolfe, as a "non-retained" expert, will be allowed to testify only about information that he obtained, and opinions that he formed, while performing the tasks that he was asked by Besser to do, in his capacity as a software expert, to address and resolve the problems with EAD's software for the Inland project. *See American Property Constr. Co.*, 274 F.R.D. at 5 (similarly limiting the testimony of "non-retained" experts).

### C.     *Evidence Of Damages For Rewriting Software*

EAD also seeks to exclude evidence of damages that Besser argues that it will incur in providing a new controls system to Inland to replace the system provided by EAD. Besser argues that such evidence should be allowed.

#### 1.     *Arguments of the parties*

EAD argues that, because Judge Zoss held that the May 1, 2012, letter from Inland did not demand a new controls system, it is not clear what basis Besser has to request such damages. Moreover, EAD argues that Besser acknowledged in its motion to reopen discovery that this is an entirely new category of damages, which had never been a part of its counterclaim and, therefore, never subject to discovery during the discovery period. EAD argues that, where Besser failed to timely identify the information concerning its "rewrite" damages, as required by Rule 26, it should be precluded from presenting evidence of such damages at trial pursuant to Rule 37(c)(1). Somewhat more specifically, EAD argues that Besser has no adequate explanation for

why it did not previously disclose this "damages" claim and that EAD will be prejudiced if Besser is allowed to use the material at trial. EAD argues that, throughout discovery and all prior Rule 26 disclosures and supplements, Besser focused its claim for damages on its counterclaim on work performed by a different third-party (Neskcire) and alleged overcharges by EAD, and did not assert, even during the deposition of its corporate representative, that Besser intended to have Mr. Wolfe or anyone else "rewrite" the software. Thus, EAD argues that Besser should not now be allowed to double its damages calculation with a "new" category of damages.

Besser responds that it properly disclosed "rewrite" damages, once those damages became certain after the close of discovery. Thus, it argues that the harsh penalty of exclusion of this evidence is not appropriate in this case. Framing its response in light of the same factors cited by EAD, Besser argues that its disclosure of additional "rewrite" damages after the close of discovery was required under the Federal Rules of Civil Procedure and was substantially justified, because Besser disclosed them when it incurred the injury giving rise to them, and that its disclosure of such damages will not harm EAD now, where EAD argued before Judge Zoss that the information giving rise to this damages claim has been known throughout the litigation. Besser argues that EAD cannot have it both ways, arguing that it is prejudiced by lack of discovery, but asserting that the damages at issue were a "known" issue all along that could have been asserted earlier. Besser also argues that evidence of the need for a "rewrite," even if it cannot be the basis for damages, is admissible to show EAD's liability for improperly functioning software.

### 2. *Analysis*

The Eighth Circuit Court of Appeals has recognized that "[o]ne of the purposes of discovery is to eliminate unfair surprise." *Doe v. Young*, 664 F.3d 727, 734 (8th

Cir. 2011) (citing *Mawby v. United States*, 999 F.2d 1252, 1254 (8th Cir. 1993)). Furthermore, "Rule 37's enforcement mechanism helps accomplish this purpose." *Id.* More specifically, under Rule 37, "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information" to support a motion or at trial, "unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1); *Doe*, 664 F.3d at 734. On the other hand, exclusion of evidence is a "harsh" penalty that should be used "sparingly." *Id.* (noting that the district court has discretion to fashion a remedy or sanction for a discovery violation under Rule 37, but that discretion is "not absolute," and necessarily narrows as the severity of the remedy or sanction increases). The Ninth Circuit Court of Appeals, for example, has found that exclusion of damages evidence may be an appropriate sanction for untimely disclosure of such evidence, pursuant to Rules 26(a) and 37(c), even if the sanction precludes a proponent's entire claim, without regard to "willfulness" of the untimely disclosure. *See Hoffman v. Construction Protective Servs., Inc.*, 541 F.3d 1175, 1179-80 (9th Cir. 2008). It also concluded that a modification of the discovery schedule, even if it does not require rescheduling the trial, is not "harmless" within the meaning of Rule 37(c). *Id.* at 1180.

Like Judge Zoss, I am not entirely convinced that Besser was justified in disclosing a claim for and evidence supporting damages for a complete "rewrite" of EAD's software only after the discovery deadline closed. The May 1, 2012, letter from Inland, on which Besser still relies for this argument, is not a clear "trigger" for such a damages claim—and just as importantly, if it was such a "trigger," it was not the first one. Thus, exclusion of evidence supporting this additional item of damages for untimely disclosure would be permissible under applicable law. *See* FED. R. CIV. P. 26(a) and 37(c)(1); *Doe*, 664 F.3d at 734; *see also Hoffman*, 541 F.3d at 1179-80. On the other hand, I find that, in the circumstances presented here, such a sanction would

be unduly "harsh," *Doe*, 664 F.3d at 734, because EAD was not entirely unaware of the possibility of such damages, for the reasons EAD itself offered in its resistance to Besser's motion to reopen discovery. I also find that, notwithstanding that either party could have renewed a motion to reopen discovery after the trial date was changed, which significantly changed the timeframe available to pursue discovery on the claim for a new item of damages, neither party made any attempt to do so. Thus, the circumstances presented here and, specifically, the lack of discovery on the issue, were created by the parties.

I conclude that an appropriately tailored remedy for any untimeliness of Besser's express disclosure of its claim for "rewrite" damages, which is less harsh yet sufficient to remedy the error harmless, *see Doe*, 664 F.3d at 734, is to allow, *now,* discovery targeted to that item of damages, including a deposition of Mr. Wolfe concerning the basis for his determination of the need for such a "rewrite" and the amount of damages for such a "rewrite," as reflected in his quote for a "rewrite," and EAD's designation of and the parties' deposition of a rebuttal witness or expert. Therefore, I will deny this portion of EAD's Motion In Limine, and will, instead, allow limited, targeted discovery within a very short timeframe, so as not to delay trial any further. Again, to the extent that this remedy imposes burdens and inconveniences on the parties, those burdens and inconveniences are the result of their failure to attempt to remedy the problem themselves in a timely fashion.

## III. CONCLUSION

Upon the foregoing, EAD's September 12, 2012, Motion In Limine (docket no. 39) is **denied** as to both categories of challenged evidence. However,

1.    As to testimony from Mr. Wolfe, Besser is cautioned that Mr. Wolfe, as a non-retained expert, will be allowed to testify only about information that he obtained, and opinions that he formed, while performing the tasks that he was asked by Besser to do, in his capacity as a software expert, to address and resolve the problems with EAD's software for the Inland project; and

2.    The parties shall have **to and including October 31, 2012,** within which to pursue limited discovery of Besser's claim for "rewrite" damages, including a deposition of Mr. Wolfe concerning the basis for his determination of the need for such a "rewrite" and the amount of damages for such a "rewrite," as reflected in his quote for a "rewrite," and EAD's designation of and the parties' deposition of a rebuttal witness or expert.

IT IS FURTHER ORDERED that, to avoid exposure of potential jurors to information about challenged evidence, this ruling shall be sealed until ten days after completion of the trial or notice of any settlement, unless a party files a motion within that ten-day period showing good cause why the ruling should remain sealed.

IT IS SO ORDERED.

**DATED** this 8th day of October, 2012.

_Mark W. Bennett_
_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA